Filed 7/14/22  Rabadi v. Nasrawi CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REEM J. RABADI, | |
| Plaintiff and Respondent, | G060602 |
| v. | (Super. Ct. No. 30-2020-01166905) |
| REHAB NASRAWI et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Lysaght Law Group, Brian C. Lysaght and Natasha Riggs for Defendants and Appellants.

Orrick Herrington & Sutcliff, Khai LeQuang and Richard W. Krebs for Plaintiff and Respondent.

\*          \*          \*

Rehab Nasrawi, Shadi Nasrawi and Maha Nasrawi (collectively the Nasrawis) appeal from an order granting respondent Reem Rabadi's (Reem) motion to disqualify their attorney Lysaght Law Group (LLG) because LLG represented Reem in a prior matter.[1] The Nasrawis contend the trial court abused its discretion in granting the motion to disqualify because it failed to consider whether any information LLG obtained in the prior matter was material to the issues in the present action. As explained further below, we conclude the prior and present matters are substantially related and accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

On October 22, 2020, Reem filed a declaratory relief action, seeking a judicial declaration that: (1) she had purchased three life insurance policies issued to her sister Rehab pursuant to a November 22, 2018 Purchase and Sale Agreement (PSA), and (2) her nephew and designee, Kameel Reehani, was the sole owner of record of the policies in accordance with change of ownership forms submitted to the life insurance companies.[2] In her complaint, Reem alleged that in 2015, Rehab and her son Shadi asked her to purchase life insurance policies insuring Rehab. In exchange for paying all policy premiums, Reem would receive 80 percent of the death benefits, of the premiums she paid. Shadi was designated the beneficiary of the remaining 20 percent interest. Rehab subsequently obtained three life insurance policies, and Reem made various payments to her, which were used to pay the premiums.

The complaint further alleged that in 2017, Rehab and Shadi sought to renegotiate the parties' agreement, and in response Reem stopped making payments,

---

[1] For clarity and convenience, we will – as the parties do in their briefing – refer to individuals by their first name. No disrespect is intended.

[2] The insurers also were named as defendants, but because they are not parties to this appeal we will only refer to them when necessary.

which resulted in two policies lapsing. Subsequently, in 2018, the parties entered into the PSA, wherein Reem agreed to reinstate the lapsed policies and continue to pay all premiums in exchange for a 70 percent interest in the death benefits. Shadi was designated the beneficiary of the remaining 30 percent interest. In accordance with the PSA, Rehab executed change of ownership forms for the policies, changing the owner of record to Reem. But the forms were never submitted to the insurers due to Shadi's threats against Reem. During this period, Reem's daughter, Sandra Rabadi, and Rehab opened a joint bank account, and Reem began making payments into this account instead of directly to Rehab.

The complaint alleged that in 2019, after Rehab was diagnosed with cancer, Shadi began pressuring Reem to sell the policies so he could cash out. Shadi and his wife Maha also began contacting the insurers to change the policy information. In response Reem and Rehab agreed to make Reehani the mediator and new owner of record. In August 2020, Rehab executed several change of ownership forms changing the record owner of the policies to Reehani and submitted the forms to the insurers. The complaint further alleged that Shadi then contacted the insurers, claiming Rehab's signature on the change of ownership forms were forged and requesting they reverse any changes to the record owner. Subsequently, the insurers either refused to confirm whether they have processed the change of ownership forms or advised Reem they had reversed the change of ownership.

B. *Answer and Cross-Complaint*

Rehab, represented by LLG, filed an answer generally denying the allegations. She also asserted numerous affirmative defenses, including fraud and duress, based on allegations that Reem threatened or tricked her to sign the documents.

On June 22, 2021, the Nasrawis, represented by LLG, filed a cross-complaint against Reem and her son Salameh Rabadi (collectively the Rabadis), and

3

Reehani. The cross-complaint alleged causes of action for false impersonation and elder abuse, and sought restitution, quiet title and declaratory relief.

The cross-complaint alleged that in 2015, the Rabadis enticed Rehab, who does not read or speak English, to apply for life insurance. She agreed to allow Salameh to apply for life insurance on her behalf and "to fund all insurance premiums to repay prior debts owed to Rehab by his family." Rehab would be the insured and sole owner, and Shadi would be the sole beneficiary.

In May 2017, Salameh informed Shadi he had a buyer for one of the policies, but Rehab refused to sell. In retaliation, Salameh stopped paying premiums on two policies, causing them to lapse. During the following years, defendants or their agents began impersonating Rehab and contacting the various life insurance companies to change the owner of record or beneficiary. On Thanksgiving evening in 2018, Reem's daughter and another member of Reem's family fraudulently induced Rehab to sign the PSA.

The cross-defendants filed an answer, generally denying the allegations and raising numerous affirmative defenses.

C. *Motion to Disqualify Attorney*

On July 16, 2021, Reem moved to disqualify LLG from representing the Nasrawis because LLG previously had represented Reem on an allegedly substantially related matter. The motion alleged that LLG represented Reem, her husband Josef, her daughter Sandra and her son Nidal from April 2013 through April 2014. In that matter, LLG prepared a complaint asserting causes of action relating to their interests in life insurance policies of others, including misappropriation of commission, attempting to sell the policies without the Rabadis' consent and misappropriation of the interests of others in the policies. The motion to disqualify alleged the prior matter involved similar factual allegations including: "(1) misappropriation of commissions in connection with the sale of life insurance policies, (2) the secret selling of life insurance policies without the

4

owners' consent, (3) impersonating other parties in efforts to deceive insurers and other owners of interests in life insurance policies, (4) false reports, misrepresentations, and forgeries of life insurance documentation presented to insurers of policies in which the Rabadis hold an interest, (5) the financing of premiums on life insurance policies owned by the Rabadis, (6) elder abuse, (7) the inability to speak or understand English, (8) solicitations of other Jordanians in Orange County to invest in life insurance, (9) misappropriating others' interests in life insurance policies, (10) taking advantage of unsophisticated elderly middle easterners through trickery and deceit by using their family members as agents and accomplices, and (11) conspiracies between Jordanian insureds and brokers to defraud those holding contractual interests in life insurance policies of others."

The motion to disqualify further alleged that during the year-long representation, LLG's attorneys exchanged more than 1,100 e-mails with Sandra and Nidal, who were the primary client contact due to Reem's limited English; participated in 50 conference calls with Sandra and Reem; and met in person with the Rabadis numerous times. The motion asserted that LLG obtained confidential information from Reem and her family, including the Rabadis' strategies for acquiring and financing life insurance policies and their settlement and litigation strategies. In a supporting declaration, Reem stated she "shared private information with Brian Lysaght and Natasha Riggs [of LLG], through Sandra and Nidal, about our family relationships, finances, business pursuits, litigation and settlement approaches, financial resources, banking information, my ownership interests in life insurance policies and strategies for life insurance policy investment."

The verified Fourth Amended Complaint filed in 2011, prepared by LLG, alleged that Abraham Khader, a licensed life settlement broker and life insurance agent, "engaged in an affinity fraud scheme targeting fellow Middle Eastern citizens, particularly seniors who had limited English language skills. . . ." It further alleged that

5

Khader solicited and sold to Reem a fractionalized interest in securities in life insurance policies of others; Reem made payments directly to the insured, which the insured used to pay premiums; and some underlying policies were sold without Reem's approval or knowledge.

D. *Opposition to Motion to Disqualify*

The Nasrawis opposed the motion to disqualify LLG, arguing there was no substantial similarity between the prior matter and the instant matter "other than the fact that both the former and present action involve life insurance. In the former action [Reem] alleged fraud by third persons in connection with policies in which she had an interest. Here it is [Reem] who is charged with orchestrating a fraud concerning the rights of her sister Rehab in the subject policies." The motion further asserted that LLG never received any confidential information from Reem that was material, i.e., directly at issue or of critical importance to the present action. It noted LLG attorneys had no contact with Reem after the initial client intake, citing supporting declarations from Brian Lysaght and Natasha Riggs.

The Lysaght and Riggs Declarations both stated the attorneys had minimal contact with Reem, mainly exchange of greetings. They did not have direct communications with Reem, and did not know whether she had limited English skills. The attorneys also stated that in the prior action, Khader's attorney reached a clandestine settlement with the Rabadis that would deny LLG its contingency fee, resulting in LLG's withdrawal from the case.

The Nasrawis also objected to the statement in Reem's declaration that she shared private information with LLG through Sandra and Nidal for lack of foundation, relevance, hearsay, and improper legal opinion. They also argued the declaration was not credible and "at best attest to a non-issue." "The sole commonality [between the prior and instant matter] is that Reem and her children (Nidal and Sandra) learned enough from

6

their former opponent . . . in the former case [that] they were able to use against Rehab in this case."

E. *Reply*

In her reply to the Nasrawis' opposition, Reem argued she presented evidence of critical or unique confidential information LLG obtained in the prior matter, including, inter alia, the Rabadis' strategies for acquiring and financing life insurance policies of others for investment. She noted her motion to disqualify LLG stated the confidential information was conveyed through Sandra and Nidal, who acted on her behalf due to her limited English skills. Reem further argued that LLG should be presumed to have obtained confidential information because the two matters are substantially related. Finally, Reem denied that the settlement in the prior matter involved a clandestine payment that denied LLG its contingency fee.

F. *Ruling on Motion to Disqualify*

At the hearing on the motion to disqualify, the trial court stated it took attorney disqualification motions "very seriously because the challenge of this sort to any attorney has to be extremely painful." The court noted that in the motion, Reem alleged LLG had access to her private information and that LLG has used that information to prepare and file the cross-complaint. The court found the prior and present matters substantially related because they both involved the families' interest in life insurance policies of others. It noted that the motion claimed the LLG attorneys became privy to "legal strategies common to all of the Rabadi family members and specifically, in reference to these multiple life insurance policies in the changing [of] beneficiaries." Finally, the court noted the LLG attorneys had some animosity against Reem related to fees in the prior matter. For all these reasons, the court stated it would grant the motion to disqualify LLG.

II

DISCUSSION

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.] Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).)

We review a trial court's ruling on a disqualification motion for abuse of discretion. "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1143-1144.)

This case presents an issue of "*successive* representation," which occurs when an attorney serves "as counsel to a successive client in litigation adverse to the interests of the first client." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283.)

8

"[W]hen ruling upon a disqualification motion in a successive representation case, the trial court must first identify where the attorney's former representation placed the attorney with respect to the prior client." (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 710 (*Jessen*).) "[A] direct attorney-client relationship is inherently one during which confidential information 'would normally have been imparted to the attorney by virtue of the nature of [that sort of] former representation,' and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation." (*Id.* at p. 709.) "If the court determines that the placement was direct and personal, this facet . . . is settled as a matter of law in favor of disqualification and the only remaining question is whether there is a connection between the two successive representations, a study that may not include an 'inquiry into the actual state of the lawyer's knowledge' acquired during the lawyers' representation of the former client." (*Id.* at pp. 710-711.)

Where the prior representation was direct, "the only issue before the trial court was whether there was a substantial relationship between what [LLG] did for [Reem] [in the prior matter] and what [LLG] seeks to do for [the Nasrawis] [in the present action]." (*Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 679 (*Farris*).) "Successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen*, *supra*, 111 Cal.App.4th at pp. 713.) "To create a conflict requiring disqualification, . . . the information acquired during the first representation must be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." (*Farris*, *supra*, 119 Cal.App.4th at p. 680.)

9

In determining whether disqualification is required, the specific task the attorney performed is not dispositive. For example, "[a]n attorney who, in the former representation of an insurance company, prepared a form of insurance policy for the company's use cannot in the second representation sue the insurance company for a breach of that policy on behalf of a person to whom a form of the policy was subsequently issued. . . . Though the services are distinct, the representations are substantially related because they both center on the terms and conditions of the single policy form which was the handiwork of the lawyer." (*Farris*, *supra*, 119 Cal.App.4th at p. 682.) Similarly, "[c]overage disputes are substantially related to bad faith actions for the purpose of attorney disqualification because they both turn on the same issue— whether or not there is coverage under the terms of the policy." (*Id*. at p. 684.) Thus, an attorney who was privy to the insurer's decision-making process to accept or deny coverage or to settle or litigate coverage disputes due to a prior representation cannot later represent an insured suing the insurer for bad faith or breach of contract because "the critical evidentiary inquiry into [the insurer]'s actions in investigating and coming to a decision on [the insured]'s claim for benefits will necessarily include an assessment of [the insurer]'s internal claims and coverage policies and practices, in general and with respect to all comparably-placed insureds." (*Id*. at pp. 684-685.)

The Nasrawis argue the trial court abused its discretion in granting the disqualification motion because it "failed to properly consider and make findings on the dispositive question of whether there exists a 'substantial relationship' between the successive representations such that information presumptively received in [the prior matter] could even be theoretically be used against the former client in [the present matter]." They argued the trial court never considered any evidence in the moving papers, but relied solely on the declarations of Lysaght and Riggs plus the fact that the two cases involved life insurance to make its substantial relationship finding. We disagree.

10

At the hearing on the disqualification motion, the trial court found that the prior and present representations are substantially related and did not limit itself solely to the Lysaght and Riggs declarations.  As summarized above, the trial court explained its substantial relationship finding was based on the claims in the motion including: (1) Reem's claim that LLG obtained "private" information which it had used to prepare the cross-complaint against her and (2) the general claim that as a result of the prior representation LLG attorneys became privy to "legal strategies common to all of the Rabadi family members and specifically, in reference to these multiple life insurance policies in the changing [of] beneficiaries."  The court did rely on the Lysaght and Riggs declarations for certain facts, such as the existence of the attorney-client relationship and the general nature and subject of the prior representation, but it never stated it relied solely on those declarations to make its substantial relationship finding, and nothing in the record suggests that to us.  The court's comments about the claims in the moving papers and its subsequent ruling belie any inference the Lysaght and Riggs declarations were all it considered in granting the disqualification motion.

In their reply brief, the Nasrawis argued LLG's representation was not direct or personal because of the lack of direct contact between LLG's attorneys and Reem.  This argument is forfeited because it was raised for the first time in the reply brief.  (See *American Indian Model Schools v. Oakland Unified School Dist*. (2014) 227 Cal.App.4th 258, 276 ["Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue"].)  But even if it were not forfeited, the trial court's finding of a

11

direct relationship is supported by Reem's statement in her declaration that she conveyed private information to LLG via her children, which the trial court noted at the hearing.[3]

The Nasrawis also argue that any information LLG acquired was "classic playbook information" or mere general knowledge of a former client's general business practices or litigation philosophy, which was not material to the issues in the second representation. We disagree that information about Reem's acquisition of interest life insurance policies of others would not be material to the present action. The parties dispute whether the Nasrawis solicited Reem to purchase life insurance for Rehab (as alleged in Reem's complaint) or Reem and Salameh induced Rehab to purchase life insurance for herself (as alleged in the cross-complaint). Knowledge about Reem's acquisition of interests in the life insurance policies of others would be directly relevant to – and of some critical importance for – a fact finder trying to resolve these disputes. For example, if Reem did not solicit others to purchase life insurance policies, but only purchased those policies after being solicited herself, it would bolster Reem's claim that the Nasrawis solicited her to purchase an interest in Rehab's life insurance policies. Thus, any knowledge of the regularity of Reem's acquisition of life insurance of others would be "material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen*, *supra*, 111 Cal.App.4th at pp. 713.) In sum, the trial court did not abuse its discretion in granting the disqualification motion because the prior and present matters are substantially related.

---

[3] The Nasrawis' objected to Reem's statement below, but on appeal do not challenge the trial court's consideration of that statement in granting the disqualification motion. Moreover, they fail to persuade us that the statement lacked foundation, relevancy or constituted inadmissible hearsay or improper legal opinion.

12

III

DISPOSITION

The order is affirmed.  Respondent is entitled to her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


13